## Bastone v Exos Fin. LLC

2025 NY Slip Op 30787(U)

March 10, 2025

Supreme Court, New York County

Docket Number: Index No. 158381/2024

Judge: Paul A. Goetz

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT:   **HON. PAUL A. GOETZ**                                      PART                              47

*Justice*

---------------------------------------------------------------------------X

BRONWEN BASTONE,

|  |  |
|---|---|
| **INDEX NO.** | 158381/2024 |
| **MOTION DATE** | 09/10/2024 |
| **MOTION SEQ. NO.** | 001 |

Petitioner,

- v -

EXOS FINANCIAL LLC, EXOS SECURITIES LLC

Respondents.

**DECISION + ORDER ON MOTION**

---------------------------------------------------------------------------X

The following e-filed documents, listed by NYSCEF document number (Motion 001) 24, 30, 42, 44, 45, 55, 56, 57, 58

were read on this motion to/for                    ENFORCE/EXEC JUDGMENT OR ORDER                    .

In this special proceeding, petitioner seeks to enforce as against respondent Exos

Financial LLC (EF) a judgment she was awarded as against respondent Exos Securities LLC

(ES) in *Bastone v Exos Securities LLC*, Index No 655644/2023.

## BACKGROUND

EF is the parent company, sole member, and 100% owner of ES; together with other

affiliates (collectively, Exos), the company provides financial services expertise (NYSCEF Doc

No 1 ¶ 1). Notably, ES and EF share: the same CEO (Brady Dougan) and many of the same

officers (*id.* ¶¶ 38-39), headquarters in Manhattan (*id.* ¶¶ 19, 23), a website (*id.* ¶ 42), and Exos

TFP Holdings LLC (TFP) as their ultimate holding company (*id.* ¶ 24). Petitioner alleges that

"Exos employees and partners did not track the hours they spent working for each Exos entity,"

as "the work [] performed supported Exos as a whole" (*id.* ¶ 32).

Petitioner worked for ES as Partner and Head of Human Capital (HR) for several years

(*id.* ¶ 2). During petitioner's employment, petitioner "regularly attended weekly executive

**158381/2024   BASTONE, BRONWEN vs. EXOS FINANCIAL LLC ET AL**                                      **Page 1 of 6**
  **Motion No.  001**

[* 1]

meetings with Dougan and Exos' senior management" in which "there was generally no distinction between [ES] and [EF]," and "the only Exos-affiliated email she was assigned was bronwen.bastone@exosfinancial.com" (*id.* ¶¶ 32-33). Upon leaving the company in October 2021, "she and Exos disagreed about whether she was owed substantial compensation that had not been paid to her under her employment contract" (*id.* ¶ 2). In August 2022, petitioner brought an arbitration proceeding against ES to recover same; the arbitrator awarded her $2,861,406.93 (the judgment), which was confirmed by the court (*id.*).

Petitioner alleges that "[r]ather than pay Bastone the money that it owes her, Exos has taken extraordinary and unlawful steps to avoid its obligation to her" (*id.* ¶ 3). Specifically, she alleges that "less than five months after Bastone filed her demand for arbitration, all but four of [ES's 92] employees were transferred to [EF's] payroll" and ES, which held over $4 million in its bank accounts, "began transferring large sums of money" to EF such that "[b]y the time the Arbitrator issued an award in Bastone's favor, [ES] had in its account less than 10% of the funds needed to satisfy the award" (*id.* ¶¶ 3-4, 52). Petitioner further alleges that "since this Court confirmed the arbitration award and issued a judgment in Bastone's favor, [ES] has become a corporate shell with no business, no revenue, and virtually no assets," while its officers "have continued to run the same business through [EF], paying its employees and vendors money that rightfully should have been used to satisfy Bastone's judgment" (*id.*).

Petitioner moves pursuant to CPLR § 5225(b) for an order permitting her to collect her judgment against EF by piercing the corporate veil between EF and ES, or in the alternative, by finding that EF is the successor company to ES through a *de facto* merger.

158381/2024   BASTONE, BRONWEN vs. EXOS FINANCIAL LLC ET AL                    Page 2 of 6
   Motion No.  001

2 of 6

## DISCUSSION

As an initial matter, while ES and EF were incorporated in Delaware, they are headquartered in New York, petitioner's employment agreement provides that it "shall be governed by and construed under the laws of the State of New York" (NYSCEF Doc No 3 § 5.6), and the judgment was entered in New York State Supreme Court (NYSCEF Doc No 4). Therefore, New York law will be applied to the instant proceeding. In any event, "the standard is not materially different under Delaware law" (*Tap Holdings, LLC v Orix Fin. Corp.*, 109 AD3d 167, 174 [1st Dept 2013]).

"Those seeking to pierce a corporate veil [] bear a heavy burden of showing that the corporation was dominated as to the transaction attacked <u>and</u> that such domination was the instrument of fraud or otherwise resulted in wrongful or inequitable consequences" (*TNS Holdings Inc. v MKI Sec. Corp.*, 92 NY2d 335, 339 [1998] [emphasis added]). While "[n]o one factor is dispositive," in considering domination, courts consider factors such as:

> "the disregard of corporate formalities; inadequate capitalization; intermingling of funds; overlap in ownership, officers, directors and personnel; common office space or telephone numbers; the degree of discretion demonstrated by the alleged dominated corporation; whether the corporations are treated as independent profit centers; and the payment or guarantee of the corporation's debts by the dominating entity . . ."

*Cortlandt St. Recovery Corp. v Bonderman*, 226 AD3d 103, 105 [1st Dept 2024] [citation omitted].

Petitioner argues that the corporate veil must be pierced because EF is the alter ego of ES, its wholly owned subsidiary, and Exos is abusing the corporate form to evade the judgment entered in petitioner's favor. She asserts that ES was not adequately capitalized, lacking sufficient funds to cover its obligations to vendors and partners; ES is insolvent, owing $692,000

158381/2024   BASTONE, BRONWEN vs. EXOS FINANCIAL LLC ET AL
Page 3 of 6
Motion No. 001

3 of 6

to vendors and defending against an arbitration award and three additional lawsuits while its accounts are frozen; ES and EF failed to observe corporate formalities, instead operating as a single entity under one brand name with the same place of business, vendors, HR policies, officers, and personnel; EF transferred nearly $2 million of ES's funds into its own accounts, leaving less than $250,000 in the ES accounts by the time petitioner's arbitration award was due; and ES has acted as a façade for EF, as EF had significant control over ES's operations and finances (NYSCEF Doc No 25). Petitioner argues that Exos's actions were intended to leave ES judgment-proof, as evidenced by the fact that ES transferred its funds to EF shortly after petitioner filed her demand for arbitration, and thus "it would be manifestly unjust to permit [EF] to skirt the judgment that Bastone obtained against its wholly-owned subsidiary" (*id.*).

Regarding domination, respondents argue that while petitioner claims Exos "ran its business" through ES, ES and EF are merely two of at least six entities that make up Exos, of which TFP is "the ultimate parent entity at the top of the corporate structure" (NYSCEF Doc No 45). Respondents note that EF was not capable of taking over all of ES's operations because unlike ES, EF is not a registered broker-dealer with the SEC and a FINRA member. They argue that though the Exos entities share office space, employees, and expenses, they "observe substantial corporate formalities," such as maintaining their own bank accounts, records of transactions, and operating agreements (*id.*). The factors identified by respondents are insufficient to overcome petitioner's prima facie showing of dominance. As detailed *supra*, petitioner laid out the various ways in which EF and ES may be considered alter egos, including that they "share[] common officers" and a CEO; they "occupied [the same] business premises"; and even though EF did not take over every one of ES's functions, it "continued to conduct substantially the same business," as evidenced by the fact that nearly all of ES's employees were

158381/2024   BASTONE, BRONWEN vs. EXOS FINANCIAL LLC ET AL          Page 4 of 6
Motion No.  001

4 of 6

transferred to EF (*Board of Trustees v Allure Metal Works, Inc.*, 209 AD3d 712, 714 [2nd Dept 2022]).

Yet, "domination, standing alone, is not enough [to pierce the corporate veil]; some showing of a wrongful or unjust act toward [petitioner] is required" (*Morris v State Dep't of Taxation & Fin.*, 82 NY2d 135, 141-42 [1993]). As to this element, respondents argue that petitioner failed to establish that "[EF] used [ES's] corporate form to commit any fraud, misrepresentation, illegality, or other wrong against Bastone" (NYSCEF Doc No 45). Specifically, they assert that the transfer of nearly all employees from ES to EF was not done in response to plaintiff seeking arbitration; rather, ES "conferred with FINRA about this planned internal restructuring in or about September 2022" and it was only effectuated months later (*id.*). Respondents also assert the $1.6 million in net transfers in 2023 was not fraudulent, but "on account of obligations [ES] owed to [EF] under Exos's expense sharing agreement, primarily on account of [ES's] share of payroll expenses" (*id.*).

"While fraud certainly satisfies the wrongdoing requirement, other claims of inequity or malfeasance will also suffice," such as "[a]llegations that corporate funds were purposefully diverted to make it judgment-proof or that a corporation was dissolved without making appropriate reserves for contingent liabilities" (*Baby Phat Holding Co., LLC v Kellwood Co.*, 123 AD3d 405, 407-08 [1st Dept 2014]). Here, petitioner has demonstrated that, regardless of whether respondents acted with fraudulent intent, EF's control over ES "resulted in wrongful or inequitable consequences" (*TNS Holdings Inc.*, 92 NY2d at 339); namely, the transfer of a substantial portion of ES's funds, thereby preventing petitioner from recovering on her judgment, and EF continues ES's business while remaining shielded from its liabilities (*Grammas v Lockwood Assoc., LLC*, 95 AD3d 1073, 1074 [2nd Dept 2012] [failing to reserve funds for the

158381/2024 BASTONE, BRONWEN vs. EXOS FINANCIAL LLC ET AL Page 5 of 6
Motion No. 001

5 of 6

purposes of contingent liability may be considered an abuse of the corporate form]). Respondents' opposition failed to raise an issue of material fact on this issue, and therefore the corporate veil may be pierced, and therefore petitioner's successor liability argument will not be addressed.

**CONCLUSION**

Accordingly, it is

ORDERED that the petition is granted; and it is therefore

ORDERED and ADJUGED that the judgment entered on December 28, 2023, in favor of Petitioner and against Exos Securities LLC in *Bastone v Exos Securities LLC*, Index No 655644/2023 (NYSCEF Doc No 4), may be enforced by petitioner as against respondent Exos Financial LLC.

20250310144234PG0ETZ1B9CBB27CB554CE3856F444D785E36D4

| **3/10/2025** | | | |
|---|---|---|---|
| **DATE** | | **PAUL A. GOETZ, J.S.C.** | |

| CHECK ONE: | **X** | CASE DISPOSED | | NON-FINAL DISPOSITION | |
|---|---|---|---|---|---|
| | **X** | GRANTED | DENIED | GRANTED IN PART | OTHER |
| APPLICATION: | | SETTLE ORDER | | SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | FIDUCIARY APPOINTMENT | REFERENCE |

158381/2024   BASTONE, BRONWEN vs. EXOS FINANCIAL LLC ET AL                    Page 6 of 6
Motion No.  001

6 of 6